Chandler
vs:
The State

---

## COURT OF APPEALS, JUNE TERM, 1820.

### CHANDLER *vs.* THE STATE, (a.)

A special de-
murrer to a count
in a declaration,
of *general indebi-
tatus assumpsit* for
a certain sum,
without setting
out the cause or
consideration up-
on which the debt
accrued, ruled
good.
The printer of
the state, holding
his office under
an annual salary,
is not entitled to
additional com-
pensation for any
duties by him per-
formed as such.

APPEAL from *Baltimore* county court.  This was an ac-
tion of *assumpsit*, instituted by the appellant, (the plain-
tiff in the court below,) against the state.  The declara-
tion contained *three* counts—The *first* for sundry matters
properly chargeable in account; the *second* for work and
labour, &c. and the *third* a general *indebitatus assumpsit*
for a certain sum of money, without setting out the cause
or consideration upon which the debt accrued.  To the
*first* and *second* counts the general issue was pleaded; and
to the *third* count there was a *special demurrer*, and the
causes of demurrer were—1. That the plaintiff, in that

(a) This case, not being prepared by the reporters, was omit-
ted in its proper place.

count, does not set forth any cause or consideration upon which the pretended debt accrued; and 2. That he doth not set forth how, or for what cause, or in what manner, the state became indebted to him. *Joinder* in demurrer. The county court ruled the demurrer good.

At the trial of the issue in fact, the case appeared to be as follows: On the 6th of November 1811, by a resolution of the general assembly it was resolved, that the plaintiff "print the laws and votes and proceedings, and perform such other services as have been usually performed by the printer employed by the state, or may be required by the legislature, or either branch thereof, or by the governor and council." The plaintiff continued printer for three successive years, and performed all the services stated in his account filed, wherein he charged the state with work and labour, and materials found, in printing the laws and votes and proceedings of the sessions of 1811, 1812 and 1813, including the votes and proceedings for the justices of the peace, amounting in the whole to   $5564 75

He credited the state with three years salary of $1200 per annum, and $243 allowed to him by the executive, under the resolution of 1811, No. 64,                                 3843 00

_____

$1721 75

On the 19th of November 1811, a resolution passed requiring the printer to print the laws and votes and proceedings in a form different from the former mode of printing them. On the 24th of December.1811, the plaintiff petitioned for extra compensation on account of the additional expense and trouble by reason of such alteration; which petition was referred to a committee, who reported a resolution authorising the governor and council to make him compensation for such additional services; but the resolution was referred to the next general assembly. The act for paying the civil list was passed on the 27th of December 1811, in which the printer was allowed a salary of $1200, which he regularly received. At November session 1812, a resolution passed authorising the governor and council to adjust the plaintiff's claim, "and allow him such sum as they may in justice believe him entitled to for any services he may have performed, or expenses incurred, beyond the ordinary services which had been performed, and

JUNE 1820. expenses incurred by his predecessor." The governor and council, under that resolution, allowed to the plaintiff $243 for the extra services and expenses imposed on him by the resolution of 1811, No. 64. The plaintiff claimed from time to time a further compensation on the same account, for printing the laws and votes and proceedings for the years 1812, 1813, 1814 and 1815. The house of delegates in 1816 proposed by a resolution to allow him $700; in 1817 they proposed to allow him an additional sum to make his salary for each of the years 1813, 1814 and 1815, equal to $1400 per annum; and in the same year they proposed to authorise the governor and council to settle and liquidate his claim. Neither of which resolutions was concurred in by the senate. The acts for the payment of the civil list for the years 1816, *ch.* 230, and 1817, *ch.* 212, allowed to the printer an annual salary of $1400. It appeared to have been the usage to pay to the printer of the state a separate compensation for printing the laws and votes and proceedings of all extra sessions, over and above the salary allowed by the acts to pay the civil list; and for all printing specially directed by both branches, or either branch of the legislature, or by the governor and council, separate allowances, as for work and labour done, have always been made to the printer of the state, over and above the annual salaries fixed by the acts for paying the civil list. The *third* section of the act of 1790, *ch.* 51, directing the printing and distributing the laws and votes and proceedings, did not direct that a copy of the votes and proceedings should be printed and sent to the justices of the peace. The governor and council, on the application of the plaintiff relative to the number of copies of the votes and proceedings required to be printed of November session 1811, gave it as their opinion that the act of 1790, *ch.* 51, s. 3, did not make it the duty of the printer to print the votes and proceedings for the justices of the peace, but that the general usage had been to print them; and they advised him to furnish the copies, &c. By an order of the house of delegates adopted in 1794, it was ordered, "that the printer of the state transmit, at the end of each session, to each person entitled to a copy of the laws, a copy of the votes and proceedings of the legislature." On the application of the plaintiff to the general assembly at June session 1812, stating that he had not been apprised of the

<div style="margin-left:2em">
Chandler
vs
The State
</div>

order of 1794, or he would have complied with it, a reso-
lution was then passed, declaring it to be "the duty of the
printer of the state to print a sufficient number of copies
of the votes and proceedings at the last session for each
justice of the peace." Under this resolution the plaintiff
did print 690 copies of a second edition of the said votes
and proceedings, which he charged to the state in his ac-
count exhibited. Evidence was offered, that the former
printer to the state claimed compensation for printing
*Kilty's* edition of the laws, which claim, by a resolution,
was referred to the governor and council, who made an
allowance therefor, and which was paid to the printer; af-
ter which he brought an action against the state, and re-
covered a further sum, which was paid to him under a re-
solution in 1810. On these facts the counsel of the state
prayed the court to direct the jury, that the plaintiff, from
the time of his appointment to the office of printer to the
state in November 1811, until a period subequent to the
1st of April 1814, held his office under an annual salary
of $1200, which by his account he acknowledged to have
received, and that he is entitled in law to no additional al-
lowance; and further, that the rendering of the services
specified in the plaintiff's said account as printer to the
state, does not furnish any consideration upon which an
assumpsit can be implied from the state, and consequently
he is not entitled to recover in this action. Which direc-
tion the court, [*Dorsey*, Ch. J. and *Hanson*, A. J.] did
give to the jury. The plaintiff excepted; and the verdict
and judgment being against him, he prosecuted this ap-
peal.

The cause was argued before BUCHANAN, EARLE and
JOHNSON, J.

*Pinkney* and *R. Johnson*, for the appellant, contended,
1. That this action could be sustained against the state
under the act of 1786, *ch.* 53. 2. That there was a suffi-
cient consideration to support an *indebitatus assumpsit.*
On the *first point* they referred to the acts of assembly of
1786, *ch.* 53, *ch.* 49; 1816, *ch.* 98; May 1781, *ch.* 17;
1786, *ch.* 18. Also *Nicholson vs. The State,* 3 *Harr. &
M'Hen.* 109. *The State vs. Chase,* in this court, at De-
cember 1810, and *Green vs. The State* in *A. A.* county

court in 1810. On the *second point* they referred to the several acts of assembly; resolutions, and votes and proceedings, herein before mentioned:

*Winder* and *Boyle* (employed by the executive—*Williams*, the assistant attorney general, having been the appellant's counsel,) for the state, contended, 1. That the action could not be maintained against the state: 2. That the plaintiff was a salaried officer; and 3. That there could not be an implied, where there was no express *assumpsit.* They relied on 1 *Com. Dig.* tit. *Actions*, (C. 1.) 6 *Com. Dig.* tit. *Prerogative*, (D. 78.) 3 *Blk. Com.* 255, 256. *Riley*, 251; and the several acts of assembly, resolutions, and cases referred to by the appellant's counsel.

Buchanan, J. delivered the opinion of the court. This case comes before us on an appeal from the judgment of the county court of *Baltimore*, in a suit instituted by the appellant against the State of *Maryland*, under the act of 1786, *ch.* 53.

The two counts relied upon in the declaration are, the *first* on a general *indebitatus assumpsit* for sundry matters properly chargeable in account; and the *second* for work and labour done, and materials found. And on an attentive examination of the evidence produced at the trial, and set out in the bill of exceptions, we are constrained to say, that whatever demand the appellant may have on the liberality of the legislature; the law will not sustain the claim he has set up.

The printer to the state, is an officer appointed by the legislature, whose duty it is, to print the laws and resolutions, and the votes and proceedings of each session, on a salary annually fixed and ascertained by that body, and provided for by an act for the payment of the civil list, according to invariable usage, since the year 1784; and it appears to have been the constant practice, to print a sufficient number of the votes and proceedings; for the use of the justices of the peace, throughout the state, without any other compensation than his annual salary provided for, and paid as before stated.

At the November session 1811, the appellant was appointed printer to the state by the legislature, who at the same session passed a resolution, directing the laws and resolutions, and the votes and proceedings, to be printed

in a manner and style different from that in which they had usually been printed. On which he preferred a petition to the legislature, complaining of the alteration directed in the manner of printing the laws, &c. and proposing, instead of a gross sum as a compensation in the form of a salary, the adoption of a different mode of payment.

This application was rejected; and by the act for the payment of the civil list, which was subsequently passed, but at the same session, his salary was fixed at $1200. At the extra session of June 1812, he presented a memorial to the legislature, requesting an expression of their wishes and opinion on the question, whether it was his duty to print the votes and proceedings of the precedig Nnovember session of 1811, for the justices of the peace, with a suggestion of the expectation, that they would make him a compensation for it; at the same time acknowledging the pre-existing practice by the printers to the state, to print the votes and proceedings of each session for the justices of the peace; and admitting, that if he had been aware of the order of the house of delegates in 1794, directing a copy of the votes and proceedings to be furnished by the printer, to each person entitled to the laws, he would have conformed to that practice; but resting his excuse for not doing so on the act of 1790, *ch.* 51, which does not expressly direct it to be done.

In consequence of which, the legislature passed a resolution, (not *making* it his duty,) but *declaring it to be his duty*, to print the votes and proceedings of the November session 1811, for the justices of the peace; but allowing him no compensation for it, and expressing no wish upon the subject. After the passage of which resolution he printed 600 copies of the votes and proceedings of that session, for the use of the justices of the peace; and at the November session 1812, he preferred a petition to the legislature; asking an additional compensation for the increased expense he had been at in printing the laws, &c. in conformity with the resolution passed at the preceding November session, directing a different manner of printing them, which subject was referred to the governor and council, who allowed and caused him to be paid $243, as an extra compensation.

For the years 1812, 1813 and 1814, he continued printer to the state, at an annual salary of $1200, which was

provided for, as usual, in the annual law for the payment of the civil list, and, as it appears, was all regularly paid.

During which years he printed the laws and resolutions, and the votes and proceedings, agreeable to the requisitions of the resolution of the November session 1811, and printed and distributed the votes and proceedings for the use of the justices of the peace; and this suit was brought to recover the value of his work and labour done, and materials found, in printing the votes and proceedings for the justices of the peace, and in the altered manner of printing the laws, &c.

It appears to have been the settled usage, to pay for the printing of the laws and resolutions, and the votes and proceedings, in the form of a salary to the printer, and in no other way. And as it had been the uniform practice for the printers to the state to print a sufficient number of the votes and proceedings of the legislature for the use of the justices of the peace, with no other compensation for that description of service than the annual salary provided for towards the close of each session, by an act for the payment of the civil list, the legislature must be understood as having made, and the appellant as having accepted, the appointment of printer to the state, with a view to that practice, which thus entered into, became a constituent part of the contract.

The act of 1790, *ch.* 51, *s.* 3, prescribing the duties of the printer to the state, directs that, immediately on the receipt of the votes and proceedings, and the laws and resolutions of the legislature, he shall proceed to print and stitch them, and print, stitch and pack up, under the direction of the governor and council, one copy of the laws and resolutions, and one copy of the votes and proceedings of each branch of the legislature, for the governor and council, and for each member of the general assembly; one copy of the laws and resolutions, well bound in blue boards, and four copies of the votes and proceedings, for the clerk of each respective county, &c. one copy of the laws and resolutions for each of the judges and justices of the peace within this state, and for the attorney general; one copy of the laws and resolutions for the register in chancery, and for the register of wills in each respective county, and for the clerk of the general court, on the western and eastern shore respectively, and for the respective trea-

surers, &c. and seal and direct them accordingly, and deposit them in the council chamber, &c. under certain penalties. It is true that *this law* does not make it the duty of the printer to the state to print, &c. the votes and proceedings for the use of the justices of the peace, and it would not have been incumbent on the appellant to do so, if the resolution of the November session 1811, appointing him the printer to the state, had merely conferred upon him the appointment, without saying any thing more.

But that resolution is in these words, "Resolved, that *Jehu Chandler* print the laws, and votes and proceedings of the general assembly, and *perform such other services as have been usually performed by the printer employed by the state*, or may be required by the legislature, or either branch thereof, or by the governor and council."

The words "and perform such other services as have been usually performed by the printer employed by the state," cannot, we think, be understood as having relation to any services required by the act of 1790, *ch.* 51, *s.* 3, such as "stitching, packing up," &c. because, if he had simply been appointed printer to the state, without any thing more being added, it would have been his duty to do whatever is directed to be done by that law, and those words having no other object, would have been altogether nugatory.—Nor. can they be, considered as having reference to mere job-work, not embracing the laws and resolutions, and votes and proceedings, such as printing for the house of delegates, or the senate, or governor and council, which is all provided for by the latter clause of the resolution, "or may be required by the legislature, or either branch thereof, or by the governor and council."

They were, however, introduced for some purpose, and must be construed to relate to services resting entirely in *usage*, as distinguished from such as were expressly enjoined by law, and not necessary to be provided for—otherwise they would have been omitted as useless, or a different phraseology been employed, such as "are *by law required to be performed*," in the place of "*have been usually performed*."

They were intended to embrace any, and every thing, so resting in usage. Was there any such service?

The settled practice, to print a sufficient number of the votes and proceedings for the use of the justices of the

peace throughout the state, with no other compensation than the annual salary ascertained by law, (whether in consequence or not of the order of the house of delegates alone in 1794, which directs it to be done, is not material,) was a service of that description, a service that had been usually performed by the printer employed by the state, in his character of a salary officer, and within the terms of the resolution; which terms the appellant virtually accepted, by entering upon the duties of the office. There was, therefore, no *assumpsit* by the state, either express or implied, to pay him for such service, in any other way than in the form of an annual salary, which he has received. On the contrary, the resolution passed at the June session in 1812, declaring it to be his duty to print the votes and proceedings of the preceding November session, for the justices of the peace, negatives the idea, and his proceeding to print them after such an expression of opinion, was a recognition of it, as a service falling within his duty as a salary officer.

As to the alteration made by the resolution of the November session of 1811, in the manner of printing the laws, &c. it cannot be denied, that the legislature have a right to prescribe the manner of printing their laws, &c. And let it be remembered, that the appellant proposed to the legislature, before he had printed any of them, to abolish the mode of payment by a fixed salary, and to compensate him for the work and labour, &c. in another way, which they declined doing, but adhered to the established usage, and the manner of printing before directed, and fixed his salary at $1200; with a knowledge of which he did not decline the office, but went on and did the work as directed, and thus tacitly not only acknowledged the duty, but accepted the resolution, prescribing the manner in which the work should be done, as a part of his contract, and agreed to receive the salary, so ascertained, as his pay. Considering him, therefore, as a salary officer of the state, and the services for which he seeks remuneration beyond the amount of his salary, as rendered in that capacity, he is not entitled to recover in an action at law, for either class of those services, as for work and labour done, &c. but must be content with his salary, which excludes all idea of an implied *assumpsit* to pay the value of his work, whatever that might be. A contract for a fixed salary,

and an implied *assumpsit*, cannot stand together; otherwise any clerk engaged at a fixed salary, would be entitled to recover in an action of *assumpsit* for any increased labour he might be put to, in consequence of an extension of his employer's business, which cannot be. And this, in fact, is but a suit by a salary officer, for the inadequacy of his salary, to the duties discharged as such. With respect to the claim for printing the votes and proceedings for the use of the justices of the peace, the concluding counsel for the appellant, did indeed seem, in argument, to limit his pretensions to a compensation only for printing the 690 copies of the votes and proceedings of the November session 1811, virtually yielding all other, and founding that claim solely on the application of his client to the legislature, for their opinion on the question, whether it was his duty to print them, and the consequent resolution adopted by that body, declaring it to be his duty. But it is not perceived that the expression by the legislature, of the opinion that it was his duty to perform that service as a salary officer, amounted to an implied *assumpsit* to make him a compensation for it over and above his salary. And surely, the circumstance that the legislature, at the November session of 1812, gratuitously referred to the governor and council the question, whether he should be allowed any additional compensation for the alleged increased expense he had been at in printing the laws, &c. of the November session 1811, in the manner and style directed by the resolution of that session, furnishes no evidence of an implied agreement to pay him an extra compensation beyond his salary for the ensuing year, and more particularly as his salary was continued to be fixed at $1200 for each succeeding year, in which he acquiesced, and continued to discharge the duties required of him, and thus recognised the principle, that he was to be paid by way of salary alone—And the additional allowance made him by the governor and council, under the reference, for printing the laws, &c. of the November session 1811, has been paid.

In this view of the subject, it is not necessary to look into the question raised in argument, whether the claim of the appellant is of that description, for the recovery of which the act of 1786, *ch.* 53, provides the right to sue the state.

JOHNSON, J. This was an action brought against the state, to recover a compensation for work and labour, and for the materials furnished by the plaintiff in printing, (amongst other things,) 690 copies of the votes and proceedings of the legislature for the year 1811.

It appears to me, that the state, in all cases where it employs an individual, and obtains his services, is bound to make a compensation for such services; and unless they are performed for a stipulated compensation, or comprehended in the duties to be performed for a fixed salary, the amount of the compensation no more rests with the state, than it would rest with an individual employer. The services being performed, the law, as well against the state, as the individual employer, raises an obligation, and creates an implied *assumpsit*, to make such compensation as the services and articles found are worth, to be ascertained, (the state having by law permitted the suit to be brought,) through the instrumentality of a court and jury.

The 690 copies of the votes and proceedings having been printed for delivery, and accepted by the state, through the proper channel, the printer, if he has not been compensated therefor, ought to sustain his claim.

To form an opinion on this subject, it is necessary to examine into the contract made between the state and the plaintiff. And as he has received an annual salary from the state, to ascertain whether that salary can be made a compensation for the work in question.

On the 6th of November 1811, the plaintiff, by a resolution of the legislature, was called on "to print the laws and votes and proceedings of the general assembly, and. *perform such other services as have been usually performed, by the printer employed by the state,* or that may be required by the legislature, or either branch thereof, or by the governor and council." Under this resolution the plaintiff commenced, and went on to print; by doing so, he acceded to the terms of the resolution, and the contract became thereby mutually binding; he was bound to perform the work, and the state to compensate him for the same.

Long before and at the time of the passage of the resolution, the uniform practice of the state had been to pay the printer for "printing the laws and votes and proceedings," by an annual salary, ascertained near the conclu-

sion of the session, by the passage of a law for the payment of the civil list, in which the printer is included.

It will be perceived that the resolution which contains the terms of the contract between the state and the plaintiff, prescribes not the *extent* of the work to be done by the printer; it directs him to print the "laws and votes and proceedings," and perform such other services as have been usually performed by the printer to the state.

As then the contract itself is silent as to the extent of the services, we must resort to other sources to ascertain its meaning, and find out what services he was to perform, connected with the laws and votes and proceedings, and the number his contract called on him to publish, for the contemplated salary.

By the act of 1790, *ch.* 51, which law was in full operation, and the only law existing when the plaintiff contracted to work for the state, the whole extent of the duties he is called on to perform, as connected with the laws and votes and proceedings, are pointed out with precision, and these are the duties for which the printer is compensated by the annual salary given him in the law for the payment of the civil list. The act of 1790, *ch.* 51, explicitly declares the *names* or *characters* of those officers of the government who are to receive the laws, together with the votes and proceedings, and who are to receive the laws and resolutions. It directs, that the printer "shall *print* and *stitch*, and *pack up*, under the direction of the governor and council, as *many copies thereof as shall be sufficient for the following persons and purposes;* that is to say, one copy of the laws, resolutions, and one copy of the votes and proceedings of each branch of the legislature, for the governor and council, and for each member of the general assembly;" and after designating those who are to have copies of the votes and proceedings, it directs who are to have copies of the *laws and resolutions*, and amongst the persons thus mentioned are *the justices of the peace.*

It would seem impossible to entertain a doubt, but that the printer of the state, under this law, which was the only law existing when he contracted, was not bound to furnish a copy of the votes and proceedings for *each justice of the peace.*

We have seen, by the resolution under which the appointment was made, that he was to "perform such other services as have been usually performed by the printer employed by the state." The effect and operation of these words are, that the printing shall be done under the regulations contained in the act of 1790, ch. 51; and the printing, when done, "*stitched and packed*," &c. as there directed. This appears most evident to me; for the latter part of the resolution makes it his duty, to do what in addition "the legislature, or either branch thereof, or the governor and council may require," thereby leaving the words of the resolution confined to the stitching and packing the work as directed by the act of 1790, ch. 51.

Having thus ascertained the extent of the duties to be performed by the printer, and what the annual salary comprehends, it remains to be considered whether he has done any other work for which he has received no compensation.

The plaintiff having printed and packed the number of the laws and votes and proceedings *directed by the act of* 1790, called on the executive for their construction of that act, to know from them, whether he was *bound* to furnish the justices of the peace with the votes and proceedings. They agree that the act did not demand them, but *advise him* that it was best to furnish the copies, without directing that he should do so.

In June 1812 an extra session of the legislature was held, and the printer, by his memorial, requests of them to be directed, if to furnish the copies of such was their desire, expressing his belief that the legislature would not demand his labour without making compensation. The legislature of that session do not *direct* him to print the votes and proceedings for each justice of the peace; they do not promise compensation, but say *it was his duty to print them.*

The legislative will being thus expressed, the plaintiff did print the 690 copies of the votes and proceedings for the justices of the peace, for the printing of which no compensation has been made, and to obtain satisfaction for them the present suit was brought.

By the act of 1790, if the printer fails to perform the duties thereby imposed on him, he incurs considerable penalties, and forfeits his salary.

The plaintiff thought he was not bound to print, the executive advise him, and the legislature declare it his duty to print them.

If this was a contract between two individuals, I should conceive little doubt could be entertained. Suppose one individual to engage another to do certain work for him, and in the performance of the work the parties differ, (as is often the case,) as to the extent of the contract—the employer demanding more work to be done than the workman thought himself bound to do. The workman says he will go on, if he is to be paid; he is told to go on, because it is his duty under the first contract. He does go on, and completes more work than the first contract covered. Could the defence for one moment be sustained, that the workman should have no compensation for the extra work, because the employer did not promise to pay or direct him to proceed, but only declared he was bound to proceed? If the contract did not embrace the work, the law would raise an implied *assumpsit*, and compel payment. The case before the court is not distinguishable from the one supposed.

JUDGMENT AFFIRMED.